A98A0955. ROJAS v. THE STATE.
(509 SE2d 72)

POPE, Presiding Judge.

Tania Milagro Rojas was tried and convicted of driving under the influence of alcohol, speeding, having an improper tag and possessing marijuana. She appeals, claiming that the trial court erred in denying her motion to suppress evidence of her refusal to submit to state-administered tests of her blood, breath or urine, because the implied consent warnings she was given did not comply with the stat-

utory language of OCGA § 40-5-67.1.

The evidence at trial showed that on November 26, 1996, Gwinnett County police officer Michael Saunders observed Rojas' vehicle speeding on I-85. Saunders activated his blue lights and began following Rojas, who continued driving and then drove over the solid white line demarcating the outside lane. Rojas then drove past the exit ramp and finally pulled over into the emergency lane. When Saunders first approached her car, Rojas would not roll down her window. When Rojas eventually complied with Saunders' request to roll down the window, Saunders asked for her driver's license and proof of insurance. Rojas fumbled through some documents and eventually located her Florida driver's license; she was unable to find her insurance card. While Rojas was looking for the papers, Saunders smelled a strong odor of alcohol on Rojas' breath and asked her to step out of her car. When she did so, Saunders noticed that Rojas' eyes were bloodshot and her face was flushed. Saunders retrieved the alco-sensor from his car while Rojas leaned against her car. Saunders asked Rojas to blow into the alco-sensor, but she refused. Saunders then asked Rojas if she would take any other field sobriety tests; she said that she would not.

Saunders testified that Rojas appeared to be under the influence of alcohol to the extent that she was less safe to drive. Accordingly, he placed her under arrest for driving under the influence. Saunders testified that Rojas initially resisted arrest, but that he was able to handcuff her and place her in his patrol vehicle.

Saunders then entered her car to impound it and smelled marijuana. He then discovered three marijuana cigarettes in the ashtray of her car.

Saunders read Rojas the implied consent rights, stating: "[i]f you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year." Rojas refused to submit to any chemical testing. After Rojas' refusal, Saunders told her that her license would be suspended "for one year tonight." At trial, Saunders admitted that this was an incorrect statement because Rojas had a Florida license. Before Rojas was taken from the scene, she again stated that she was not willing to submit to a blood and urine test. She reiterated her refusal to submit to these tests at the jail.

1. In her first enumeration of error, Rojas argues that the court erred in denying her motion to suppress because the officer did not give an implied consent notice exactly tracking the language of OCGA § 40-5-67.1.[1] The written notice which Saunders read to Rojas

---

[1] Contrary to the State's arguments we conclude that Rojas properly preserved this

precisely tracks the language of OCGA § 40-5-67.1 (b). Nevertheless, at trial and at the motion to suppress hearing, Saunders testified that in reading Rojas the implied consent rights, he stated: "[a]fter first submitting to the required state test, you are entitled to *an* additional chemical *test* of your blood, breath, urine or other bodily substances at your own expense and from qualified personnel of your own choosing." The statutory warning provides that a person is entitled to "additional chemical tests," and it does not contain the word "an."

Arguing that her motion to suppress should have been granted, Rojas cites various cases interpreting the statute as requiring an exact reading of the notice. In *State v. Halstead,* 230 Ga. App. 208 (496 SE2d 279) (1998); *State v. Barfield,* 230 Ga. App. 141 (495 SE2d 622) (1998); and *State v. Fielding,* 229 Ga. App. 675 (494 SE2d 561) (1997), this Court concluded that the trial court properly granted defendants' motions to suppress when the implied consent notice at issue informed them that they were entitled to an additional test of their own choosing, rather than to additional tests. While *State v. Fielding* and *State v. Barfield* involved additional deviations from the statutory language, in *State v. Halstead* the sole deviation before the court was the failure to advise the defendant of his right to additional chemical tests. Compare *State v. Hopkins,* 232 Ga. App. 705 (503 SE2d 590) (1998).

Since the above cases were decided, the legislature has amended OCGA § 40-5-67.1 (b) so that it does not require a verbatim reading of the implied consent notice. In *State v. Levins,* 234 Ga. App. 739 (507 SE2d 246) (1998) (physical precedent only), this Court stated: "[i]n passing the amendment, the General Assembly declared, but did not codify, 'that while suspects in (DUI) cases should be informed of their rights regarding the administration of chemical testing, no such suspect is entitled to a notice which tracks the exact language of the implied consent statute, so long as the substance of the notice remains unchanged.' Ga. L. 1998, p. 210, § 1." Id. at 739-740. "The amended OCGA § 40-5-67.1 (b), effective March 27, 1998, provides that the implied consent notice 'shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged.' As [two members of this Court] recently found in *State v. Nolen,* 234 Ga. App. 291 (508 SE2d 733) (1998) (physical precedent only), this amended statute should be applied retroactively." Id. at 740.

---

error below. Her written motion to suppress argued that she had been "misinformed" under the Georgia implied consent law and that the arresting officer had "made false and misleading statements" regarding OCGA § 40-5-67.1. See generally *Turner v. State,* 178 Ga. App. 888 (1) (a) (345 SE2d 99) (1986).

In light of the recent amendment to the statute, we conclude that the officer's reading of the implied consent notice was sufficient. In notifying Rojas that after submitting to the required state-administered test, she was entitled to an additional chemical *test* of her own choosing, the substance of the notice Saunders gave Rojas was unchanged. Officer Saunders alerted Rojas to the fact that she could have additional testing done — that he did not alert her that she could have additional tests performed is not dispositive under the amended OCGA § 40-5-67.1 (b). Furthermore, the officer's failure to advise Rojas that she was entitled to additional "tests" was not fatal because the record shows that she rejected the opportunity to have any additional test at all. Because of her rejection of *any* additional test, whether she was advised that she was entitled to more additional "tests" was immaterial.

As explained fully in *State v. Levins* and *State v. Nolen*, application of the amended OCGA § 40-5-67.1 (b) in this case will not impair any vested right of Rojas, nor will it alter any of her substantive rights. Accordingly, Rojas' arguments that the court erred in denying her motion to suppress on this basis are without merit.

Although we are mindful that our holding here conflicts with the result reached in *State v. Halstead*, 230 Ga. App. 208; *State v. Barfield*, 230 Ga. App. 141; and *State v. Fielding*, 229 Ga. App. 675, our instant decision comports with the amendment to OCGA § 40-5-67.1 (b). *State v. Halstead*, 230 Ga. App. 208; *State v. Barfield*, 230 Ga. App. 141; and *State v. Fielding*, 229 Ga. App. 675, were decided before the new amendment was effective and are no longer applicable.

2. Rojas also argues that the implied consent warning was deficient because Saunders gave her false information regarding the consequences of refusing the state-administered chemical test. Although Saunders initially advised Rojas correctly that if she refused the testing her privilege to drive on Georgia highways would be suspended for a minimum period of one year, after she refused to submit to the tests, Saunders told her that her license would be suspended "for one year tonight." Citing *Deckard v. State*, 210 Ga. App. 421 (436 SE2d 536) (1993), Rojas argues that Saunders' statement that her driver's license would be suspended for "one year tonight" was misleading, since Rojas had a Florida license and Saunders had no authority to suspend it.

We agree with Rojas that Saunders' statement that her license would be suspended that night was incorrect. See generally OCGA § 40-5-51 (a). Nevertheless, unlike the situation in *Deckard v. State*, in this case the misstatement was harmless: it was made *after* Rojas had refused to consent to the state-administered test; and the statement did not coerce Rojas to consent to the state-administered test.

See *Dept. of Pub. Safety v. Bafford*, 223 Ga. App. 639 (478 SE2d 444) (1996). "This is not a case where the state has subtly coerced defendant into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants defendant to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." (Citations and punctuation omitted.) *Sorrow v. State*, 178 Ga. App. 83-84 (342 SE2d 20) (1986). The court did not err in refusing to grant her motion to suppress. Compare *State v. Coleman*, 216 Ga. App. 598 (455 SE2d 604) (1995).

3. Finally, Rojas claims that the evidence was insufficient to convict her of driving under the influence of alcohol and possession of less than an ounce of marijuana. We reject this argument and find that a rational trier of fact could find from the evidence adduced at trial proof of her guilt of these crimes beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED NOVEMBER 5, 1998 —
RECONSIDERATION DENIED DECEMBER 2, 1998

*Randall S. Estes, Robert W. Chestney*, for appellant.

*Gerald N. Blaney, Jr., Solicitor, Allison L. Thatcher, Assistant Solicitor*, for appellee.