## A98A2301. THE STATE v. SNEDDON.
### (510 SE2d 566)

Judge Harold R. Banke.

The State appeals the trial court's order granting Thomas Sneddon's motion seeking the suppression of a chemical sobriety test. See OCGA § 5-7-1 (a) (4).

This case arose after the arresting officer observed Sneddon driving down a local interstate with a nonfunctional headlight and tag light. When the car began weaving across the fog line and center line, the officer initiated a stop. Upon approaching the car, he noticed a strong odor of alcoholic beverages emanating from its sole occupant, Sneddon, who admitted to imbibing several drinks at his girl friend's house. As he exited the car, Sneddon stumbled and subsequently failed a field sobriety test the officer administered. When Sneddon refused further field testing, the officer arrested him for driving under the influence ("DUI"), placed him in the rear of the patrol car, and read him the implied consent notice. Sneddon was then transported to the jail where he submitted to an Intoxilyzer 5000 breath test which registered over the legal limit.

Sneddon subsequently sought suppression of, inter alia, the Intoxilyzer 5000 results, arguing that the implied consent warnings were inadequate. At a hearing, the officer read back the warning he had administered to Sneddon. Sneddon then reserved his objections to the test results. Shortly thereafter, the trial court issued a written order denying the motion, finding that the officer properly read the implied consent card by reciting the exact words.

After receiving a written transcript of the hearing, Sneddon sought reconsideration of this decision. As a result, the trial court issued a second order finding clear error in its earlier conclusion that the arresting officer had correctly read the implied consent notice. The court based this ruling on a finding that, instead of correctly informing Sneddon that "[a]fter first submitting to the required State's test" he was entitled to "additional chemical tests of your blood, breath, urine, or other bodily substances" as mandated by OCGA § 40-5-67.1 (b) (1), the officer stated, "you are entitled to *an*

additional chemical test of your blood, breath, urine, or other bodily substances." The State filed a timely notice of appeal from this order.

Some months later, the trial court issued an order granting the court reporter permission to amend the hearing transcript to correct errors therein. The amended transcript states that the officer did not include the erroneous "an" in the above-stated sentence, reading instead, "you are entitled to additional chemical tests of your blood. . . ." *Held*:

The State contends that the trial court erred in requiring the officer to quote OCGA § 40-5-67.1 (b) (1) verbatim when administering the implied consent notice. We agree.

In its ruling, the trial court relied on opinions of this Court which required an exact reading of the notice.[1] See, e.g., *State v. Halstead*, 230 Ga. App. 208, 209 (496 SE2d 279) (1998). Those opinions were issued before the effective date of the General Assembly's amendment to OCGA § 40-5-67.1 (b) (3), which eliminated the exact reading requirement.[2] We subsequently determined that the amendment had retroactive effect. *State v. Levins*, 234 Ga. App. 739 (505 SE2d 246) (1998); *State v. Moncrief*, 234 Ga. App. 871 (508 SE2d 216) (1998). Although that holding is not dispositive of this case, we must determine whether the officer's reading changed the substance of the notice. Id.; see *Harrison v. State*, 235 Ga. App. 78 (508 SE2d 459) (1998).

OCGA § 5-6-41 (f) authorizes trial courts to accept amendments to transcripts to make them conform to the truth. *Bates v. State*, 228 Ga. App. 140 (2) (491 SE2d 200) (1997). Subsection (f) permits such corrections "either before or after the record is transmitted to the appellate court" upon suggestion by the parties or on the trial court's own initiative. OCGA § 5-6-41 (f). Here, in a supplemental transcript submitted to this Court, the court reporter certified that corrections were required as a result of a proofing error in transcription.[3]

Because the corrections to the transcript were permissible, we confine our analysis to the amended transcript which read as follows: "Georgia law requires you to submit to the state-administered chemical test[s] of your breath" — "of your blood, breath or urine, or other bodily substance[s] for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this test[ing], your Georgia driver's license or privilege to drive on the highways of this

---

[1] The suppression order was issued in June 1998. Sneddon was arrested in June 1997.

[2] The amendment states: "Such notice shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged."

[3] Notwithstanding Sneddon's assertion to the contrary, nothing in the record reveals any improper ex parte communication between the State and the trial court. The errors here could have been raised by the court reporter or sua sponte by the trial court.

state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to the test[ing], and the results indicate an alcohol concentration of .10 grams or more, your Georgia driver's license or privileges to drive on this highway of the state may be suspended for a minimum period of one year. After first submitting to the required state's test[s], you are entitled to additional chemical tests of your blood, breath, urine or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state-administered chemical test[s], and at that time I designated breath [under the implied consent law]." *Leavitt v. State*, 264 Ga. 178, 179 (2) (442 SE2d 457) (1994). The officer's omissions are in brackets and his additions are underlined.

Sneddon maintains that the officer's additions and deletions failed to inform him that he had the right to have multiple additional tests of his blood, breath or urine and that the State could ask for multiple tests. The corrected version of the hearing negates the first assertion. As to the second, in *State v. Hopkins*, 232 Ga. App. 705 (503 SE2d 590) (1998), this Court held that "[i]f the officer is requesting consent for only one test, as in this case, correcting the grammar of the sentence by changing test to tests is not a substantive change which alters the meaning of the question. Instead, it makes the critical sentence in the warning, which defines the test for which consent is sought, more understandable." This reasoning applies equally in the instant case, where the officer requested only one test.

Because Sneddon's argument that retroactive application of OCGA § 40-5-67.1 (b) constitutes an ex post facto violation was not raised in the trial court and this case does not turn on that issue, we need not reach it here. *Nolen v. State*, 234 Ga. App. 291, 292 (508 SE2d 733) (1998) (physical precedent only).

*Judgment reversed. Johnson, P. J., and Smith, J., concur.*

DECIDED DECEMBER 11, 1998.

*Leslie C. Abernathy, Solicitor, William A. Finch, Laura A. Janssen, Assistant Solicitor*, for appellant.

*Spruell, Taylor & Associates, Billy L. Spruell, Melinda D. Taylor*, for appellee.