A07A0323. McHUGH v. THE STATE.
(645 SE2d 619)

BERNES, Judge.

After the denial of his motion in limine and his subsequent bench trial, Gregory R. McHugh was convicted of driving with an unlawful alcohol concentration and speeding. McHugh appeals, contending that the trial court erred in denying his motion in limine to exclude the results of a state-administered breath test. According to McHugh, he was misinformed by the arresting officer that if he refused to take the breath test, his out-of-state driver's license would be suspended. We disagree and affirm.

The parties have stipulated to the facts surrounding McHugh's arrest. "Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation and punctuation omitted.) *Stapleton v. State*, 279 Ga. App. 296 (1) (630 SE2d 769) (2006).

So viewed, the record reflects that on March 26, 2006 at approximately 2:21 a.m., an officer with the DeKalb County Police Department observed McHugh's vehicle speeding and initiated a traffic stop. McHugh admitted to the officer that he had been drinking alcohol, and the officer smelled a strong odor of alcoholic beverage coming from the vehicle and observed that McHugh's face was flushed and his eyes were watery. Upon request, McHugh produced a valid Pennsylvania driver's license. After conducting a series of field sobriety tests, the officer concluded that McHugh was under the influence of alcohol and placed him under arrest.

Immediately after the arrest, the officer prepared to read McHugh the implied consent notice for suspects age 21 or over, codified at OCGA § 40-5-67.1 (b) (2) (the "Implied Consent Notice"). Prior to doing so, the officer stated that what he was about to read "deals with your license to drive and your privilege to drive in Georgia, okay?"[1] Following this initial statement, the officer accurately read verbatim the Implied Consent Notice, which included the following:

Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. *If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year.* Your refusal to submit to the required testing may be offered into evidence against you at trial. *If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year.*

(Emphasis supplied.) OCGA § 40-5-67.1 (b) (2). The officer designated a breath test as the state-administered chemical test that would be offered to McHugh.

McHugh agreed to take the state-administered breath test, which was administered properly and reflected an alcohol concentration above the legal limit of 0.08 grams. See OCGA § 40-6-391 (a) (5). McHugh did not request an independent test. Based on the results of the breath test, McHugh was arrested and charged with several offenses, including driving with an unlawful alcohol concentration and speeding.

McHugh subsequently filed a motion in limine seeking to exclude the results of the breath test. McHugh argued that the arresting officer had misinformed him that a refusal to consent would result in the suspension of his Pennsylvania driver's license. The trial court denied the motion, and after a bench trial on stipulated facts,

---

[1] The parties stipulated that this was the officer's statement. However, we have reviewed the videotape of the stop, which reflects that the officer stated:

I need to read this to you, okay? This deals with your license and your privilege to drive in Georgia, okay? . . . I need to read this to you. This deals with your driver's license and your privilege to drive in Georgia.

Nevertheless, the difference between the stipulation and the videotape does not affect the analysis or result on appeal.

McHugh was convicted. This appeal followed, in which McHugh argues that the trial court erred in denying his motion in limine.

> The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing. Even when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.

(Citations and punctuation omitted.) *State v. Chun*, 265 Ga. App. 530, 531 (594 SE2d 732) (2004).

The Georgia Department of Public Safety cannot suspend the driver's license of a nonresident; rather, it is limited to revoking or suspending "the non-resident's privilege of driving a motor vehicle on the highways of this state." (Citation and emphasis omitted.) *State v. Coleman*, 216 Ga. App. 598, 599 (455 SE2d 604) (1995). See also *Deckard v. State*, 210 Ga. App. 421, 422 (436 SE2d 536) (1993). As such, in several cases we have held that suppression of test results is required when the holder of an out-of-state driver's license is told by a law enforcement officer that his license will be suspended for refusing to submit to the test. See *Kitchens v. State*, 258 Ga. App. 411, 412-415 (1) (574 SE2d 451) (2002); *State v. Peirce*, 257 Ga. App. 623, 625-627 (1) (571 SE2d 826) (2002); *State v. Renfroe*, 216 Ga. App. 709, 709-710 (455 SE2d 383) (1995); *Coleman*, 216 Ga. App. at 599-600; *Deckard*, 210 Ga. App. at 422-423.

According to McHugh, the arresting officer's initial statement to him before reciting the Implied Consent Notice was false and misleading, since the officer advised him that the statutory notice he was about to hear would "deal[ ] with [his] license to drive." McHugh maintains that the officer's initial statement erroneously indicated that the language in the Implied Consent Notice addressing the suspension of a driver's license applied to his Pennsylvania driver's license. As such, McHugh asserts that the officer improperly advised him that his out-of-state driver's license would be suspended if he refused to take the state-administered breath test.

We disagree. The officer's introductory statement to McHugh that the Implied Consent Notice would deal with his license was not the equivalent of stating that McHugh's Pennsylvania license would be suspended if he refused the breath test. Rather, the introductory

statement, standing alone, was vague and indefinite, and it simply served the purpose of drawing McHugh's attention to the officer's subsequent verbatim recitation of the statutory Implied Consent Notice, which itself made clear that only a "Georgia driver's license or privilege to drive on the highways of this state" would be suspended upon a refusal to take the breath test. OCGA § 40-5-67.1 (b) (2). The state is correct that the officer's initial statement was nothing more than an "attention-grabbing preface," and, as such, did not constitute a substantive change that altered the meaning of the Implied Consent Notice thereafter recited to McHugh. See generally *State v. McGraw*, 237 Ga. App. 345, 346-347 (2) (514 SE2d 34) (1999); *Harrison v. State*, 235 Ga. App. 78, 79-80 (508 SE2d 459) (1998).

Furthermore, the vague, unspecified initial statement made by the officer is unlike the statements made in prior cases involving out-of-state licenses where we held that suppression of the test results was appropriate. In those cases, the officers much more directly and explicitly told the drivers that their out-of-state licenses would be suspended for refusing to submit to the state-administered test. See *Kitchens*, 258 Ga. App. at 412 (officer informed Alabama license holder that if she refused the test, " 'you're automatically charged with DUI and your license (is) going to be suspended' "); *Peirce*, 257 Ga. App. at 624 (officer informed Texas license holder that if he refused the test, "he would lose his driver's license"); *Renfroe*, 216 Ga. App. at 710 (officer informed Florida license holder that if he refused the test, his "license may be suspended for a minimum period of one year") (punctuation and emphasis omitted); *Coleman*, 216 Ga. App. at 599 (officer informed North Carolina license holder that if he refused the test, " 'you will lose your privilege to operate a motor vehicle from six to twelve months' "); *Deckard*, 210 Ga. App. at 421 (officer informed Tennessee license holder that if he refused the test, " 'your driver's license will be suspended for six months' ").

For these reasons, we hold that the officer's implied consent warning given to McHugh was substantively accurate so as to permit him to make an informed decision about whether to consent to the state-administered breath test. The trial court therefore did not err in denying McHugh's motion in limine to exclude the breath test results.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED APRIL 17, 2007.

*Robert W. Chestney*, for appellant.

*Shawn E. LaGrua, Solicitor-General, Thomas J. Ludlam, Assistant Solicitor-General*, for appellee.