S07A1438. PETTY v. THE STATE.

(658 SE2d 599)

HUNSTEIN, Presiding Justice.

Appellant Kareem Petty was convicted of felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the shooting death of Gloria Peloquin. The trial court denied Petty's motion for new trial[1] and he appeals.

1. The evidence authorized the jury to find that police responding to a report of a minor traffic accident just outside the parking lot of a shopping center discovered that the driver of one vehicle had been shot and was dead. A witness had seen a young African-American male waiting nervously outside a Save-A-Lot store in the shopping center and then walking "shoulder-to-shoulder" with the victim to her vehicle; the same person ran through the parking lot and past the witness's van after the shooting and traffic accident. Two other witnesses saw a person running from the scene after the sounds of a gunshot and a car crash. Describing a teenaged African-American male of medium height with a light complexion, these witnesses identified Petty in photo line-ups and at trial.

A photo from the Save-A-Lot's surveillance video showing the victim inside the store with an unidentified person was broadcast on the news, and police received a tip identifying that person as Ervin Fox. When brought in for questioning, Fox said that the shooter was a person by the name of "Little E" or "Little Red," which police determined was Kareem Petty's nickname. Police interviewed Petty,

---

[1] The crimes occurred on April 22, 2004. Petty was indicted in Chatham County on March 30, 2005 and charged with malice murder, felony murder based on aggravated assault with a deadly weapon, felony murder based on aggravated assault with intent to rob, aggravated assault by shooting, aggravated assault with a gun with intent to rob, and three counts of possession of a firearm during the commission of a felony. On December 12, 2005, a jury found Petty guilty of felony murder based on aggravated assault with intent to rob, aggravated assault with a gun with intent to rob, and one count of firearm possession. The trial court merged the felony murder and aggravated assault convictions, sentencing Petty in an order entered December 16, 2005 to life imprisonment for felony murder and a five-year consecutive term for the firearm conviction. Petty's motion for new trial was filed on January 5, 2006, amended on December 6, 2006, and denied on March 15, 2007; his notice of appeal was timely filed. The appeal was docketed in this Court on June 7, 2007, and oral argument was heard on September 10, 2007.

who was 16 at the time and was accompanied by his mother, on two occasions. At the first interview, Petty was advised of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and signed a written waiver of those rights; he denied knowing anything about the murder and said he heard that Fox did it. When Petty returned for additional questioning the next day at the request of police, he again was read and waived his *Miranda* rights. After first giving various conflicting versions of events, Petty finally admitted that he and Fox were at the Save-A-Lot; that he waited outside the store while Fox followed the victim inside; that when the victim and Fox came back out, Fox ordered him to rob the victim; that he walked with the victim to her vehicle and asked her for change; that when they reached her vehicle he pulled a gun and a struggle ensued in which the victim was accidentally shot; and that the victim tried to drive away, but hit another car.

Viewed in the light most favorable to the verdict, the evidence was sufficient for a rational trier of fact to find Petty guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Petty contends that the trial court erred by denying his motion to suppress his second statement to police.

> When an appellate court reviews a trial court's grant or denial of a motion to suppress, the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review. [Cit.]

*State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005).

The trial court found that Petty was not in custody at the time he made the second statement. The record reveals that Petty was allowed to leave after his first interview and that, when police contacted his mother the next day and asked to speak with him again, he returned to the police station voluntarily. While in the hallway before entering the interview room, Petty asked for an attorney, which led to a discussion regarding whether and how he could obtain court-appointed or retained counsel. Petty thereafter entered the interview room, was read and waived his *Miranda* rights, and submitted to questioning. He was not prevented from leaving or terminating the interview. After Petty provided incriminating information, the police placed him under arrest. In determining whether a suspect is in custody, the question is whether "a reasonable person in [his] situation would believe he was being restrained to the degree associated with a formal arrest." (Footnote omitted.) *McDougal v. State*, 277 Ga. 493, 497 (1) (A) (591 SE2d 788) (2004). As a reasonable

person in Petty's situation would not have felt so restrained, we agree with the trial court that Petty was not in custody when he made the second statement.

Petty maintains that any questioning by police after his request for an attorney violated his Fifth Amendment right to counsel under *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). However, the bright-line rule of *Edwards*, requiring that all questioning cease after an accused has requested counsel, applies only to custodial interrogation. Id. at 485 (II) ("it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel"). To the extent that *Nobles v. State*, 191 Ga. App. 594 (1) (a) (382 SE2d 637) (1989) can be read to hold that *Edwards* also applies in a non-custodial situation, it is hereby overruled. See *McNeil v. Wisconsin*, 501 U. S. 171, 182, n. 3 (111 SC 2204, 115 LE2d 158) (1991) (*Miranda* rights cannot be invoked anticipatorily in context other than custodial interrogation). Because Petty was not in custody at the time he made the second statement, it follows that there was no *Edwards* violation and that the statement was properly admitted.

3. Petty argues that the trial court erred by denying his motion to require the State to give an initial closing argument. OCGA § 17-8-71 provides that "[a]fter the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury." Notwithstanding the use of the word "shall," we have long held that the trial court, in its discretion, may permit a waiver of the initial closing argument. *Bradham v. State*, 243 Ga. 638 (2) (256 SE2d 331) (1979). Although OCGA § 17-8-71 was amended in 2005 prior to Petty's trial, the amendment made no changes to this portion of the statute. Thus, *Bradham* is still controlling authority. *Lewis v. State*, 283 Ga. 191, 194 (3) (657 SE2d 854) (2008). As Petty has not shown that the trial court abused its discretion by allowing the State to waive its initial closing argument, this enumeration of error has no merit.

4. Finally, Petty contends that the trial court erred by refusing to give a requested jury charge that was intended to address the State's failure to call Fox as a witness.[2] Acknowledging that OCGA § 24-4-22, which creates a rebuttable presumption arising from the failure to

---

[2] The charge read:
I charge you that you may infer, but you are not required to do so, that when there has been competent evidence presented as to the existence of other evidence (or witness testimony) that is material and relevant to the case being tried, the State's failure to produce this material and relevant evidence (or witness's testimony), means that such evidence would have been favorable to the defendant. The weight of any missing evidence on any given question is a question of fact for the jury to decide.

introduce certain evidence,[3] does not apply to criminal cases, Petty relies on *Morgan v. State*, 267 Ga. 203 (3) (476 SE2d 747) (1996), as the basis for the requested charge at issue. *Morgan* does not provide for such an instruction, however, but merely holds that defense counsel may draw inferences from the failure to introduce evidence and comment accordingly during closing argument if there is supporting evidence properly before the factfinder. Id. After preliminary remarks to the jury, Petty's counsel did begin his closing by saying, "The first question that comes to mind to me is, where is Ervin Fox? Are you satisfied about this?," and he referred back to this point later in the argument. Because defense counsel was not prohibited from arguing that the jury should draw an inference favorable to Petty from the State's failure to call Fox, and because the trial court's instructions to the jury regarding the State's burden of proof and reasonable doubt substantially covered the principle set forth in Petty's requested charge, see generally *Walker v. State*, 282 Ga. 406 (2) (651 SE2d 12) (2007), we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 10, 2008.

*Jackson & Schiavone, Michael G. Schiavone, Steven L. Sparger*, for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[3] OCGA § 24-4-22 provides:

If a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well founded; but this presumption may be rebutted.